Paul T. AMICK

v.

LIBERTY MUTUAL INSURANCE COMPANY.

No. 80–266–Appeal.

Supreme Court of Rhode Island.

Jan. 26, 1983.

Resmini, Fornaro, Colagiovanni & Angell, Ronald J. Resmini, Providence, for plaintiff.

Rice, Dolan, Kiernan & Kershaw, Thomas C. Plunkett, Providence, for defendant.

## OPINION

MURRAY, Justice.

The plaintiff, Paul T. Amick, brought this action for declaratory judgment to determine the limits of liability in an automobile insurance policy. A Superior Court justice, on a motion for summary judgment, declared the limit of liability coverage to be $10,000 and entered judgment for the defendant, Liberty Mutual Insurance Company. This case is before the court on the plaintiff's appeal from the judgment of the Superior Court.

The trial justice decided this case on an agreed statement of facts. The parties stipulated that on May 26, 1978, plaintiff, a Rhode Island resident, was involved in an automobile accident with Michael J. Chucka (the insured), a resident of Pittsfield, Massachusetts, whose 1973 Chevrolet was registered in Massachusetts. The accident occurred on Route 95 in Warwick, Rhode Island. At the time of the accident, Chucka's automobile was insured under a policy issued by Liberty Mutual Insurance Company (Liberty Mutual). The plaintiff sustained personal injuries in the accident and subse-

quently instituted suit against the insured in Kent County Superior Court.

During the course of settlement negotiations, Liberty Mutual offered plaintiff the sum of $10,000, which it maintains is the amount of the applicable policy limit. The plaintiff rejected Liberty Mutual's offer and commenced this action for declaratory judgment, seeking to determine the liability limits of Chucka's policy.[1] The plaintiff claims that the applicable policy limit is $25,000 as required by Rhode Island General Laws.

The policy in question is a standard Massachusetts automobile insurance policy. It consists of two categories of insurance coverage. The first type, "Compulsory Insurance," must be purchased as a condition precedent to registering an automobile in Massachusetts. The second type, "Optional Insurance," may be purchased at the option of the insured. Part 5 of the policy, entitled "Optional Bodily Injury To Others," provides for payment of damages to people injured or killed in accidents for which the insured is legally responsible. This coverage extends to accidents occurring outside Massachusetts. This part contains a clause that provides:

> "Some other states and Canadian provinces require visiting autos to have higher amounts of bodily injury or property damage coverage than you may have purchased. But, if you have purchased any coverage at all under this part, we will automatically provide the required higher coverage."

The plaintiff contends that this extraterritorial-coverage clause extends the limits of the insurance policy to $25,000, which is the minimum required by the Motor Vehicle Safety Responsibility Act, G.L.1956 (1982 Reenactment) chapter 31 of title 31.[2] We agree.

In passing upon a motion for summary judgment, if no material fact is in issue, the trial judge then considers whether the moving party is entitled to judgment as a matter of law. *Ludwig v. Kowal,* R.I., 419 A.2d 297 (1980); *Belanger v. Silva,* 114 R.I. 266, 331 A.2d 403 (1975). On appeal, this court determines the motion anew and is bound by the same rules. *Westinghouse Broadcasting Co. v. Dial Media, Inc.,* R.I., 410 A.2d 986 (1980). Neither party alleges here that there are factual issues precluding the entry of summary judgment. Rather, plaintiff argues that the trial justice erred as a matter of law when he found the motor-vehicle-safety responsibility law to be inapplicable in this case.

This court's essential task in statutory construction is to determine and to effectuate the intent of the Legislature. *Conrad v. Town of Narragansett Board of Canvassers,* R.I., 420 A.2d 50, 51 (1980); *Narragansett Racing Association v. Norberg,* 112 R.I. 791, 316 A.2d 334 (1974).

The provisions of §§ 31–31–1 to 31–31–22, which require the deposit of security and suspension for failure to deposit security, subject to certain exemptions, "*shall apply to the driver and owner of any vehicle* of a type subject to registration under the motor vehicle laws of this state which is in any manner involved in an accident within this state, which accident has resulted in bodily injury to or death of any person or damage to the property of any one (1) person in excess of two hundred dollars ($200)." (Emphasis added.) Section 31–31–4.

It is undisputed that the insured was the owner and driver of the vehicle that was involved in an accident in Warwick, Rhode Island, resulting in bodily injury to plaintiff. The defendant contends that this

---

1. This court has determined that declaratory judgment is an appropriate and expeditious procedure for resolution of a "dispute over the coverage offered by a policy as applied to a crystalized set of facts." *Fireman's Fund Ins. Co. v. E.W. Burman, Inc.,* 120 R.I. 841, 845, 391 A.2d 99, 101 (1978).

2. The act includes all sections of G.L.1956 (1982 Reenactment) chapters 31 to 33 of title 31. *See* § 31–33–18 and *Rule v. R.I. Dept. of Transportation,* R.I., 427 A.2d 1305, 1306 n. 1 (1981).

chapter applies prospectively only, requiring a motorist to post security after an accident in order to operate a vehicle in Rhode Island in the future. This interpretation is clearly contrary to the language and the intent of the statute.

The language of the statute requires any driver or vehicle owner to post security upon the occurrence of an accident if there is bodily injury or property damage in the amount of $200. The purpose of this requirement is to provide sufficient security to satisfy any judgment for damages resulting from the accident. Section 31–31–5(a). This security is applicable and available for payment of any settlement agreement or judgment for damages arising from the accident. Section 31–31–20(a)(1), (2).

The statute further provides for certain exceptions to the security requirement. Section 31–31–6(1) exempts from the security and suspension requirements "[a] driver or owner if the owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident * * *." Section 31–31–7 describes the insurance policy or bond sufficient to exempt the driver or owner under § 31–31–6:

> "(a) No policy or bond shall be effective under § 31–31–6 unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, *nor unless* such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty five thousand dollars ($25,-000) because of bodily injury to or death of one (1) person, in any one accident * * *." (Emphasis added.)

The statute, therefore, provides that a driver or owner who has an automobile insurance policy with a minimum liability limit of $25,000 per person for each accident will not be required to post security with the Registry of Motor Vehicles upon the occurrence of an accident nor will he be subject to suspension for failure to deposit security pursuant to §§ 31–31–5 and 31–31–9.

Thus, while it is true that Rhode Island does not require compulsory liability insurance as a condition precedent to the operation of motor vehicles on the public highways, the Legislature has imposed financial-responsibility requirements upon automobile drivers who are involved in accidents in Rhode Island. We have held that this is a valid exercise of the police power. *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 355, 223 A.2d 447, 450 (1966); *Berberian v. Lussier*, 87 R.I. 226, 232, 139 A.2d 869, 872 (1958). These requirements include a mandatory minimum amount of liability insurance for those who undertake to insure their automobiles.

The policy underlying this statutory scheme is clearly to ensure the protection of a party injured through the negligence of another driver. The law provides a potential means of compensation for such injuries by requiring a driver or owner of a vehicle involved in an accident to deposit security. A driver or owner may avoid this requirement only if he or she is covered by the minimum amount of liability insurance required by § 31–31–7. The Legislature has determined that insurance in that amount will also protect the interests of the injured party.

The insured in the case before us has undertaken to insure his automobile. He has purchased coverage that purports to cover him if he is involved in an accident outside Massachusetts. If this court were to hold that his policy limit was $10,000, as defendant contends, the insured would be considered an uninsured motorist for purposes of this statute.[3] He would be re-

---

3. This court has defined an uninsured automobile as "an automobile not insured for bodily injury liability in minimum limits established by the legislature." *Ziegelmayer v. Allstate*

*Ins. Co.*, R.I., 403 A.2d 653, 655 (1979) (quoting *Allstate Ins. Co. v. Fusco*, 101 R.I. 350, 357, 223 A.2d 447, 451 (1966)). *See also Pickering v. American Employers Ins. Co.*, 109 R.I. 143, 282

quired to post security pursuant to §§ 31–31–4 and 31–31–5 or be subject to suspension of his driving privileges in Rhode Island under § 31–31–9.

We do not believe that the insured bargained for the status of an uninsured motorist when he purchased the optional coverage from Liberty Mutual. We believe he purchased this optional coverage to be protected from laws that would require him, if uninsured, either to post security in case of an accident or to risk suspension of his driving privileges. This is precisely the protection that the extraterritorial-coverage clause purports to provide.

█ We agree with defendant that the language of the extraterritorial-coverage clause is clear and unambiguous. This section of the policy covers the type of situation which we have before us. It promises automatically to apply a higher amount of bodily-injury or property-damage coverage if another state or province requires higher coverage.

There is no language regarding compulsory insurance in this part of the policy as defendant would have us believe. This section merely speaks of the *requirement* of higher amounts of bodily-injury coverage. As we have said above, Rhode Island, by virtue of § 31–31–7, does require minimum coverage in the amount of $25,000 if a vehicle operator undertakes to insure himself. Thus, we hold that this clause extends the insured's coverage to $25,000 in this situation.

Liberty Mutual cites as compelling *Vigneault v. Travelers Insurance Co.,* 118 N.H. 75, 382 A.2d 910 (1978). In that case, the New Hampshire Supreme Court held that the extraterritorial-coverage clause of a Massachusetts insurance policy raises the liability coverage only if the insured operates a vehicle in a state in which liability insurance is compulsory and higher coverage is required. *Id.* at 77, 382 A.2d at 912. There, the New Hampshire court construed the New Hampshire financial-responsibility

law to require "compulsory insurance only for drivers who have committed specified offenses, * * * or who have been involved in [a prior] accident." *Id.*

This construction of the New Hampshire law is not relevant to the task of construction presently before this court. There are two substantial differences between that case and the case before us. Unlike the Rhode Island statute, the language of the New Hampshire statute requires a driver or owner who has been involved in a prior accident to provide proof of financial responsibility for the future in specified amounts in order to retain his privilege of driving in New Hampshire. *See* N.H.Rev. Stat.Ann. §§ 264:3 and 264:20 (1982). The Rhode Island safety-responsibility law requires the deposit of security or an insurance policy in the minimum amount of $25,000 upon the occurrence of any accident in Rhode Island resulting in bodily injury or property damage.

Significantly, the extraterritorial-coverage clause in the policy construed by the New Hampshire court specifically limits the extension of that coverage to a situation in which "a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy." *Id.* The policy before us has no language regarding compulsory insurance. That clause automatically raises the policy limits if a state or province simply requires higher bodily-injury limits than the insured has purchased.

For the reasons set forth, the plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for entry of judgment for the plaintiff.

A.2d 584 (1971). The required minimum coverage is mandated by § 31–31–7. *Ziegelmayer v. Allstate Ins. Co., supra; Allstate Ins. Co. v.*

*Fusco,* 101 R.I. 350, 355, 223 A.2d 447, 450 (1966).