DECISION
Before the Court are nine separate Petitions for Removal of Trustee and Appointment of Successor Trustee brought by the individual trustees[1] of the trusts created by the: (1) Indenture of Helen M. Danforth DTD 3/15/41; (2) Deed of George Pierce Metcalf DTD 5/3/39 FBO Pauline C. Metcalf; (3) Deed of George Pierce Metcalf DTD 8/12/35 FBO Esther Elise Metcalf; (4) Will of Murray S. Danforth Sr. DTD 8/27/32; (5) Deed of George Pierce Metcalf DTD 7/1/47 FBO Esther E. Metcalf; (6) Deed of George Pierce Metcalf DTD 8/12/35 FBO Pauline C. Metcalf; (7) Indenture of Helen M. Danforth DTD 7/29/35; (8) Deed of George Pierce Metcalf DTD 7/1/41 FBO Pauline C. Metcalf; and (9) Deed of George Pierce Metcalf DTD 8/12/35 FBO Esther E. Metcalf.[2] Asserting that removal of Bank of America, N.A. (BOA), the current corporate trustee of the Trusts, serves the best interests of the beneficiaries and is not inconsistent with the purposes of the Trusts, the Individual Trustees seek to replace BOA with Coastline Trust Company (Coastline). While the individual actions have not been consolidated, the Court will treat them as consolidated for purposes of this Decision. *Page 4 
 I Facts and Travel
The instant matter arises out of the administration of nine irrevocable trusts governed by the laws of the State of Rhode Island. In pertinent part, each of the Trusts requires that a corporate trustee and an individual trustee act as co-trustees while managing and administering its provisions. Although Rhode Island Hospital Trust (RIHT) was the entity originally appointed as corporate trustee by the settlors of the Trusts, following a series of corporate mergers and transactions, BOA is currently acting as corporate trustee.[3]
Presently, the following Individual Trustees assist BOA with the administration and management of the Trusts. Helen Danforth Buchanan (Buchanan) is the individual trustee of the irrevocable trust created by the Indenture of Helen M. Danforth DTD 3/15/41, an indenture of trust agreement dated March 15, 1941, by and between Helen M. Danforth as settlor, and Donald S. Babcock and RIHT as trustees. Buchanan and Jane P. Watkins are the individual trustees of the irrevocable trust created by the Indenture of Helen M. Danforth DTD 7/29/35, an indenture of trust agreement dated July 29, 1935, by and between Helen M. Danforth as settlor, and Donald S. Babcock and RIHT as trustees. Buchanan and Kinnaird Howland are the individual trustees of the irrevocable trust created by the Will of Murray S. Danforth Sr. DTD 8/27/32. The trust was established under Article Fourth of his Will dated August 27, 1932, and amended by Codicils dated May 2, 1938, April 4, 1941, and December 2, 1942. Although RIHT was *Page 5 
originally the sole trustee, Helen M. Danforth and Donald S. Babcock were subsequently added as co-trustees.
Additionally, Frank Mauran (Mauran) is the individual trustee of the irrevocable trust created by the Deed of George Pierce Metcalf DTD 5/3/39 FBO Pauline C. Metcalf, an indenture of trust agreement dated May 3, 1939, by and between George Pierce Metcalf as settlor, and Donald S. Babcock and RIHT as trustees. Mauran is also the individual trustee of the irrevocable trusts created by the: (1) Deed of George Pierce Metcalf DTD 8/12/35 FBO Esther Elise Metcalf, an indenture of trust agreement dated August 12, 1935, by and between George Pierce Metcalf as settlor, and Donald S. Babcock and RIHT as trustees; (2) Deed of George Pierce Metcalf DTD 7/1/47 FBO Esther E. Metcalf, an indenture of trust agreement dated July 1, 1941, by and between George Pierce Metcalf as settlor, and Donald S. Babcock and RIHT as trustees; (3) Deed of George Pierce Metcalf DTD 8/12/35 FBO Pauline C. Metcalf, an indenture of trust agreement dated August 12, 1935, by and between George Pierce Metcalf as settlor, and Donald S. Babcock and RIHT as trustees; (4) Deed of George Pierce Metcalf DTD 7/1/41 FBO Pauline C. Metcalf, an indenture of trust agreement dated July 1, 1941, by and between George Pierce Metcalf as settlor and Donald S. Babcock and RIHT as trustees; and (5) Deed of George Pierce Metcalf DTD 8/12/35 FBO Esther E. Metcalf, an indenture of trust agreement dated August 12, 1935, by and between George Pierce Metcalf as settlor, and Donald S. Babcock and RIHT as trustees.
These Individual Trustees now seek the removal of BOA and the appointment of Coastline as corporate trustee. Coastline is a Rhode Island-chartered trust company which offers a range of fiduciary and investment management services. Coastline, which opened for business on June 14, 2004, is owned by certain members of the Metcalf and Danforth families through *Page 6 
entities that they control. In addition to their ownership interest, the Metcalf and Danforth families represent a significant client base. Coastline currently serves as an investment manager for the Trusts.
 II Standard of Review
It is a fundamental principle that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Estate of Giuliano v. Giuliano,949 A.2d 386, 390 (R.I. 2008) (internal quotation marks omitted);see also Plainfield Pike Gas Convenience,LLC v. 1889 Plainfield Pike Realty Corp.,994 A.2d 54, 57 (R.I. 2010). Our Supreme Court has stated that "summary judgment should occasion the termination of a case only where it is absolutely clear that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Estate of Giuliano,949 A.2d at 394 (internal quotation marks omitted) (emphasis added);see also Chavers v. Fleet Bank (RI) N.A.,844 A.2d 666, 669 (R.I. 2004) (summary judgment is appropriate only where it is apparent that no material issues of fact exist and the moving party is entitled to judgment as a matter of law). A court should only grant summary judgment when there is no ambiguity as a matter of law and the moving party is clearly entitled to judgment under the applicable law. Holliston Mills, Inc. v. Citizens TrustCo., 604 A.2d 331, 334 (R.I. 1992) (citing Lennon v.MacGregor, 423 A.2d 820, 821-22 (R.I. 1980)); seealso Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980) (quoting Belanger v. Silva,114 R.I. 266, 267, 331 A.2d 403, 404 (1975)). *Page 7 
 III Discussion
In a summary judgment proceeding, the moving party bears the initial burden of establishing that no genuine issue of material fact exists and can satisfy this burden by "submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties."Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). Only after the moving party has sustained its burden, must the opposing party demonstrate the existence of substantial evidence to dispute that of the moving party on a genuine issue of material fact. SeeHydro-Manufacturing, Inc. v. Kayser-Roth Corp.,640 A.2d 950, 954 (R.I. 1994); Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998).
Here, the factual record supporting the Individual Trustees' summary judgment motions consists only of: (1) their petitions; (2) their answers to interrogatories; and (3) the trust instruments themselves. The Individual Trustees rely on these documents, and the unsubstantiated representations in their memoranda, to provide support for their arguments relating to the alleged purposes of the Trusts and the alleged intent of the settlors. Although the trust instruments speak for themselves, the Court is not satisfied that Petitioners have satisfied their initial burden with such barebones and possibly inadmissible evidence.Toegemann v. City of Providence, 21 A.3d 384, 386 (R.I. 2011) (quoting Poulin v. Custom Craft, Inc.,996 A.2d 654, 658 (R.I. 2010)) (affirming that summary judgment is proper only if the Court concludes, after reviewing theadmissible evidence in the light most favorable to the nonmoving party, that no genuine issues of material facts exist and the moving party is entitled to judgment as a matter of law);see also Nedder v. Rhode Island Hosp. Trust Nat.Bank, 459 A.2d 960, 961-62 (R.I. *Page 8 
1983) (citing Ludwig v. Kowal, 419 A.2d 297, 301 (R.I. 1980) (confirming that a party who seeks summary judgment must first establish a sufficient basis from affidavits, pleadings, and discovery materials in order to prevail on its motion). Moreover, the entry of summary judgment is simply improper because the Individual Trustees' motions fail as a matter of law.
The legal basis for the Individual Trustees' motions for removal is two-fold. They maintain that under the doctrine of equitable deviation, as set forth in Section 66 of the Restatement (Third) of Trusts (Section 66), the Court may modify the Trusts and replace BOA with Coastline. They further assert that Section 706(b) of the Uniform Trust Code (Section 706(b)), providing for no-fault trustee removal, supports the Court's removal and replacement of BOA as corporate trustee.[4] For its part, BOA avers that as a matter of law, neither Section 66 nor Section 706(b) can serve as the basis for a contested trustee removal petition in Rhode Island. The Court agrees.
Courts have applied the doctrine of "equitable deviation" to permit deviation from the terms of a will or trust where there have been unforeseen circumstances and adherence to the instrument threatens to defeat or substantially impair the purpose of the trust. In re JPMorgan Chase Bank, N.A.,19 Misc.3d 337, 340, 852 N.Y.S.2d 718, 721 (N.Y. Sur. 2008). Although Courts generally do not deviate from or modify the provisions outlined by the trust settlor, Section 66 undoubtedly authorizes such actions where it is reasonably necessary to effectuate the trust's primary purpose. Section 66 provides:
 "The court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or *Page 9 
deviation will further the purposes of the trust." Restatement (Third) Trusts § 66 (2011).
Indeed, when modifying, or authorizing a trustee to deviate from, provisions governing the management and administration of the trust estate or defining the beneficial interest or entitlements of various trust beneficiaries, a court's objective is "to give effect to what the settlor's intent probably would have been had the circumstances in question been anticipated." Restatement (Third)Trusts § 66 cmts. a-b (2011).
In the instant matter, the Individual Trustees assert that BOA's replacement with Coastline is necessary in light of BOA's succession as corporate trustee following RIHT's mergers. They maintain that Section 66 provides support for their petition seeking BOA's removal as corporate trustee and its replacement with Coastline. Despite seeking summary judgment, however, the Individual Trustees can point to no comments, illustrations, or cases that provide support for the removal of a trustee under these circumstances.
The Individual Trustees direct this Court to its prior adoption of Section 66 in Prince v. Lynch, No. PB-99-5806, 2008 WL 4761484, *27 (R.I. Super. Oct. 22, 2008).Prince, however, is not dispositive on the instant matter. InPrince, this Court held that Section 66 provided an alternative basis by which to terminate the trust at issue, even without the unanimous consent of the beneficiaries. Id. In so holding, this Court determined that deviation was appropriate where the relief sought by the petitioners — early termination — was among the trust deviations expressly authorized by Section 66. Conversely, here, trustee removal is neither provided for nor contemplated by Section 66.
As examples of administrative or managerial provisions subject to modification or deviation, Section 66 provides: *Page 10 
 "[T]he provision . . . may be one expressly directing or expressly forbidding the sale of certain properties or the acquisition of certain types of investments. Or [it may] involve trust terms that do not allow invasion of principal or accumulation of income. If appropriate to the circumstances prompting the court action, and to the purposes and other circumstances of the trust, the court may so modify the terms of the trust as to require prompt termination." Restatement (Third) Trusts § 66 cmt. b (2011).
These examples, as well as the Restatement's illustrations, [5]
make clear that Section 66 was intended to assist a trustee in administering and managing the trust estate not to provide a means by which to remove or replace the trustee.
Although not specifically addressed by our Supreme Court, our Superior Court has on a prior occasion tackled the scope of Section 66. See Goddard v. Bank of Am., N.A., Nos. 09-6232, 09-6233, 09-6234, 09-6235, 09-6236, 09-6237,2010 R.I. Super. LEXIS 45, at *12 (R.I. Super. Feb. 24, 2010) (Lanphear, J.). In Goddard, the beneficiary-petitioners sought modifications to the trust documents that would, among other things, establish an investment committee to make financial decisions, alter the method of selecting institutional trustees, and authorize the investment committee to remove a trustee for any reason.Id. at *3-4. There, like here, the beneficiary-petitioners cited RIHT's numerous mergers as one basis for their claim of unanticipated circumstances, and there, like here, the Court held the modifications sought by the beneficiary-petitioners were "well beyond the intent of the Restatement language."Id. at *14. Simply put, the Goddard Court rejected the notion that Section 66 applied to the type of *Page 11 
substantive and dispositive modifications sought by the beneficiary-petitioners and this Court is in accord.[6]
While many jurisdictions have adopted Section 66, no court, including this one, has ever applied Section 66 in connection with the removal of a trustee. For that reason, the Court declines to expand the scope of Section 66's equitable deviation doctrine in light of the record currently before it.
The Individual Trustees further rely on Section 706(b)'s no-fault trustee removal approach as support for their petitions. In pertinent part, Section 706(b) provides:
 "The court may remove a trustee if . . . (4) [t]here has been a substantial change of circumstances or removal is requested by all the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available." Uniform Trust Code § 706(b) (2000) (emphasis added).
According to the Individual Trustees, RIHT's mergers and BOA's succession as corporate trustee have resulted in the substantial change of circumstances contemplated by Section 706(b). They assert, therefore, that the interests of the beneficiaries and the material purpose of the Trusts would be better served by BOA's replacement with Coastline.
As support, the Individual Trustees rely on Fleet Bank v.Foote, No. CV020087512S,2003 WL 22962488 (Conn. Super. Dec. 2, 2003), a case they believe to be on "all fours" with the instant matter. While the Court concedes that on its face, Foote may appear factually similar to the matter sub judice, the Court does not find it to be dispositive. Indeed, there, like here, beneficiaries sought removal of a corporate trustee created by a bank merger, instead preferring *Page 12 
to continue their banking affairs with two corporate officers who had new positions at a different bank. Foote,2003 WL 22962488, at *1-2. However, unlike the instant matter, the beneficiaries in Foote sought to remove Fleet as corporate trustee under the provisions of C.G.S. § 45a-242(a)(4), [7] a Connecticut-specific statute derived from Section 706(b) and expressly providing for no-fault trustee removal by a court. In contrast with Connecticut, our General Assembly has yet to enact similar legislation or adopt Section 706(b).
Furthermore, this Court has previously rejected Section 706(b)'s no-fault approach to trustee removal. See Cuzzone v.Plourde, No. 03-0524, 2005 WL 2716749, at *2-3 (R.I. Super. Oct. 17, 2005) (Silverstein, J.) (citing Capaldi v.Richards, 870 A.2d 493, 496 (Del. 2005)). In Cuzzone, this Court explicitly recognized a court's general reluctance to remove a trustee named by the settlor. See 2005 WL 2716749, at *2-3. Although Petitioners assert that "[s]uch deference . . .may no longer be justified if . . . a corporate trustee undergoes a significant structural change, such as by merger," this exception is discretionary and not absolute. Seeid.; see also Restatement (Third)Trusts § 37 cmt. f (2011) (emphasis added). Accordingly, this Court remains steadfast in its belief that the removal of a trustee by a court is an extreme remedy which should be exercised "sparingly and only upon a showing that the trustee has failed to perform his duties through more than mere negligence." Cuzzone,2005 WL 2716749, at *2-3. For that reason, the Court cannot at this time, and on the record before it, grant the Individual *Page 13 
Beneficiaries' petitions as a matter of law, and it therefore denies the Petitioners' Motions for Summary Judgment.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds as a matter of law that Section 66 does not support the Individual Trustees petitions for BOA's removal. Similarly, the Court reaffirms its prior rejection of Section 706(b)'s no-fault trustee removal approach. Accordingly, the Court denies Petitioners' Motions for Summary Judgment.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Petitioners Helen Danforth Buchanan, Frank Mauran, Kinnaird Howland, and Jane P. Watkins hereinafter referred to as "Individual Trustees."
[2] The aforementioned trusts shall collectively be referred to herein as the "Trusts."
[3] In May 1969, Rhode Island Hospital Trust Company, originally formed in 1867, changed its name to Rhode Island Hospital Trust National Bank. See Raposo Aff. ¶ 3. In May 1998, Rhode Island Hospital Trust National Bank merged with and into BankBoston, N.A.Id. In March 2000, Fleet National Bank and BankBoston, N.A. merged under the charter and title of BankBoston, N.A and changed its name to Fleet National Bank. Id. In June 2005, Fleet National Bank was merged into and under the charter and title of Bank of America, N.A. Id.
[4] Presently, Petitioners reserve their rights to seek removal of BOA under Section 65 of the Restatement (Third) of Trusts, providing for termination or modification of an irrevocable trust by consent of all of beneficiaries.
[5] The Illustrations to Section 66 involve instances where: (1) a court deviated from the terms of the trust to enable the trustee to sell property that was detracting from the overall performance of the trust; (2) a court modified the trust provisions to enable a trustee to invade principal as necessary to meet a principle beneficiary's additional needs; (3) a court ordered a trustee to cease paying trust income to beneficiary and to accumulate it for eventual distribution to remainder beneficiaries; and (4) a court altered a trust's distribution provisions where the early death of a beneficiary would lead to distribution inconsistent with the settlor's intention and purpose of the trust.
[6] Although the Court recognizes that decisions of our Supreme Court — not the Superior Court — are binding on the instant matter, the Court cannot ignore the Goddard Court's findings and conclusions given the silence of our Supreme Court and the similarities of the cases.
[7] C.G.S. § 45a-242(a)(4) provides:
 "The court of probate having jurisdiction may, upon its own motion or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary . . . [where] (4) there has been a substantial change of circumstances or removal is requested by all of the beneficiaries, the court finds that removal of the fiduciary best serves the interests of all the beneficiaries and is not inconsistent with a material purpose of the governing instrument and a suitable cofiduciary or successor fiduciary is available.

 *Page 1